(No. 2003— ▉▉▉▉▉▉▉▉▉▉▉)

WILLIAM GRADY, Claimant, *vs.* STATE OF ILLINOIS, Respondent.

*Opinion filed June 1, 1935.*

A. M. FITZGERALD, H. C. MOORE AND GILLESPIE, BURKE & GILLESPIE, for claimant.

OTTO KERNER, Attorney General; JOHN KASSERMAN, Assistant Attorney General, for respondent.

MR. JUSTICE LINSCOTT delivered the opinion of the court:

William Grady, the claimant, 68 years old, has been in the employ of the State at its power plant as a fireman, at Springfield for 21 years. On May 20, 1932, he had been assigned to the duty of operating the coal and ash conveyor equipment, and in the performance of these duties, he noticed an irregularity of operation, and proceeded to the boiler room to give notice. The room where he was walking was not well lighted and he stepped into a boiler blow-off basin, the inspection cover of which had been removed by some other employees who were cleaning sediment from this basin.

The space underneath what appears to be a sewer, had been filled with boiling water that morning and the water was still very hot when Grady met with the accident.

He was taken to St. John's Hospital and Dr. C. S. Mayes was called. Claimant had a third degree burn on one of his legs, that is, a burn which involves the tissues beneath the skin and the muscles. The burn extended from three inches below the knee down the entire leg, except the toes. Either the same day he was taken to the hospital or the next day, he expressed a desire to go home, and was taken there and was treated by Dr. Mayes, daily, sometimes several times a day, and sometimes it was necessary to treat him at night time in order to relieve his pain and suffering. The doctor testified that he was of the opinion that the burns received by claimant would have a permanent effect. A third degree burn, according to the doctor's testimony, is of such nature as nearly always involves the circulation. The scar tissues in the process of healing will include a number of blood vessels, and will draw up the muscles in the heel, and make it shorter and interfere with the motion of the limb, and will cause a leg swelling because of poor circulation, due to the scar tissue flesh.

Dr. Mayes bill was $496.00 and Grady paid this.

Claimant first filed his claim in October, 1932. On January 8, 1934, and before the hearing, he filed an amended bill. Objection is made to this for the reason that it states another and different claim. We cannot agree with this. We hold that his claim was filed in apt time.

Dr. Mayes contends that claimant has been permanently injured and has suffered a 75% loss of the use of his right leg. There is also evidence in the record which shows that his specific loss amounts to 25% of the use of the leg. From the evidence it appears that he walks around and gets around considerably, and we think that the evidence showed an approximate loss of 50% of the use of the leg.

From the time of the injury up until March 1, 1933, he was receiving $150.00 per month as his wages. On March 1, 1933, his wages were cut 10%, and thereafter, he received $135.00 per month. He was only entitled to compensation on the basis of $15.00 per week. There was therefore an overpayment of $557.65. He was also entitled to $496.00 on account of his doctor bills. There is evidence in the record

to sustain a finding of 50% loss of the use of the right leg. Item 15 of Par. D of Section 8 of the Compensation Act provides compensation for the permanent complete loss of the use of a leg 50% of the average weekly wage during 190 weeks. There are other provisions of the Compensation Act, which in this instance fix the weekly wage at $15.00 per week. He, therefore, would be entitled to ½ of the sum fixed by Statute for the complete loss of the use of the leg. That would be the sum of $1,425.00. He has been overpaid the sum of $557.65, but he is entitled to the sum of $496.00 as his doctor bill. After deducting the overpayment and adding the doctor bills, we find he is entitled to an award in the sum of $1,363.35, and that sum is recommended.